IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHARON MOHAMMED, on behalf of** | : | |
| **RICHARD MOHAMMED, a minor,** | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | No. 03-4766 |
| v. | : | |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA et al.,** | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                          February 4, 2005

On the morning of February 4, 2003, Richard Mohammed was punched in the face by another student while walking in a stairwell at Olney High School ("OHS") in Philadelphia, Pennsylvania, where Richard was enrolled in the tenth grade. On August 1, 2003, Richard's mother, Sharon Mohammed, filed the instant action under 42 U.S.C. § 1983 on her son's behalf in Philadelphia Court of Common Pleas, alleging that the School District of Philadelphia (the "School District") and various individual defendants[1] subjected Richard to a violation of his right to bodily integrity and safety guaranteed by the Fourteenth Amendment to the United States Constitution. On August 19, 2003, Defendants properly removed this case to this Court pursuant to 28 U.S.C. § 1441. Now before the Court is Defendants' Motion for Summary Judgment.[2] For the reasons set forth

---

[1] In addition to the School District, the Complaint included the following individual defendants: Paul G. Vallas, the Chief Executive Officer of the School District; Edward Monastra, the principal of OHS; Thomas Smyth, the sergeant in charge of the school police officers at OHS; and Nilvia Franco-DeJesus, Gordon Elder, Joseph Meyer, Izzy Padron, Shawn Rhodes, Frank Roman and Bryan Singletary, all of whom were school police officers assigned to OHS. By agreement of the parties, the Court dismissed all claims against Elder, Padron, Rhodes and Singletary on November 24, 2003. In addition, in their Response Memorandum, Plaintiff agrees to voluntarily dismiss all claims against Franco-DeJesus, Meyer and Roman. Therefore, the only remaining Defendants are the School District, Vallas, Monastra and Smyth, and this memorandum opinion addresses only the merits of Plaintiff's claims against them.

[2] On December 15, 2004, the Court referred this case for an arbitration hearing pursuant to Eastern District of Pennsylvania Local Rule 53.2, and an award was docketed on December 20, 2004. On January 14, 2005, the School District timely requested a trial de novo. As required by Local Rule 53.2, the Court did not consider the

below, Defendants' Motion is granted, and the Complaint is dismissed with prejudice.

## I.   FACTUAL BACKGROUND[3]

### A.   The Attack on Richard Mohammed

On the morning of February 4, 2003, Richard Mohammed entered OHS and proceeded to stairwell four on his way to his advisory room on the fourth floor. Stairwell four was the only stairwell available at that time in the morning. While Richard was walking between the third and fourth floors, another student attacked a student directly in front of Richard.[4] The attacker attempted to punch the student in front of Richard, but the student ducked, and the punch struck Richard in the eye, causing severe injury. The stairwell in which the attack occurred was not monitored by video surveillance cameras, and no security personnel were present to witness the attack. Neither the attacker nor the intended target have ever been identified.

### B.   Violence at OHS

The number of violent incidents at Olney High School in Philadelphia, Pennsylvania has increased steadily from 1999 through 2003. As Plaintiff's expert James Dallas notes in his report:

> According to a summarization of reported acts of violence of all types that was obtained through discovery, Olney High School, at Front and Duncannon Streets, Philadelphia, had during the previous three school years, reported assaults or attacks on students or faculty/staff had increased incrementally

---

occurrence and results of this arbitration in rendering its decision on the instant Motion for Summary Judgment.

[3] The facts are taken from the memoranda and documentary evidence submitted to the Court and are recited in the light most favorable to Plaintiff, the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[4] Although the attacker and his intended target remain unidentified, the Complaint refers to both of them as students. Neither party raises any issue about their identity, so for the purposes of this opinion, the Court refers to the attacker and the intended target as students as well.

>from 60 in 99-00 and 00-01 to 87 reports in the 2001-02 school year. For the school year 2002-03, through the end of January, there were 57 incidents of violence reported for just the first half of this school year. This would suggest a figure of well over 100 incidents through the end of the 2002-03 school year.[5]

In addition, Plaintiff cites to evidence that the School District and the other remaining defendants were aware of the increasing problem of violence at OHS and other schools within the district.[6] Plaintiff also points to several memoranda from Monastra regarding the lack of a full complement of school police officers at OHS on most days.[7] According to Plaintiff, this evidence demonstrates that Defendants allowed OHS to become "a hotbed of escalating violence."[8]

---

[5] Pl.'s Mem. in Opp., Exh. 1 at 4.

[6] Defendant Edward Monastra testified at his deposition that "there was a tremendous amount of fights, serious incidents, fires like crazy. . . . the building basically was out of control." Monastra Dep. at 70. Plaintiff also cites to a newspaper article describing Defendant Paul Vallas' statements to a group of parents about problems with violence at another high school within the School District. See Pl.'s Sur-reply Mem. in Opp. at 4, Exh. 10, Frederick Cusick, Vallas: District Curbing Violence at Lincoln High, Philadelphia Inquirer, Oct. 28, 2004, at B3.

[7] Pl.'s Sur-reply Mem. in Opp. at 4; Exhs. 7-9. In his deposition, Monastra testified that he believes OHS was short one officer on February 4, 2003 (Monastra Dep. at 22-23, 53); however, he acknowledged the OHS attendance records indicate that OHS was short four officers that day (Monastra Dep. at 53).

[8] Pl.'s Mem. in Opp. at 2.

## II. DISCUSSION[9]

The Complaint asserts two counts: 1) a cause of action under 42 U.S.C. § 1983 for violation of Richard's Fourteenth Amendment rights, "in that he suffered a deprivation of his bodily integrity and safety without due process of law"[10]; and 2) a cause of action for willful misconduct against the individual defendants. The Court addresses both of these counts below.

### A. 42 U.S.C. § 1983

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

This provision does not create substantive rights; rather, "it provides only remedies for deprivations

---

[9] The Court applies the familiar standard of review to the instant motion, as recently explained by the Third Circuit:

> Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Wisniewski v. JohnsManville Corp., 812 F.2d 81, 83 (3d Cir. 1987). In determining whether a genuine issue of fact exists, we resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Suders v. Easton, 325 F.3d 432, 435 n.2 (3d Cir.2003). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, ''the burden on the moving party may be discharged by "showing"--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting Celotex, 477 U.S. at 325, 106 S.Ct. 2548, 91 L.Ed.2d 265). Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).

UPMC Health Sys. v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

[10] Compl. at 8.

of rights established elsewhere in the Constitution or federal laws."[11] "Thus, [t]o establish a prima facie case under section 1983, Plaintiffs must show (1) that a person acting under color of state law (2) deprived them of a right, privilege or immunity secured by the Constitution or federal law."[12]

Here, Plaintiff claims that Defendants violated Richard's Fourteenth Amendment liberty interest in his personal integrity and his right to be free of unwarranted assaults on his person. Specifically, Plaintiff argues that "[t]he policies and deliberate conduct of all the defendants allowed a situation to exist at Olney High School that was dangerous and violent and caused Richard Mohammed's injuries."[13] It is well settled that public school districts are included in the definition of state actors for the purposes of § 1983 liability.[14] Therefore, the only issue is whether Defendants are responsible for a violation of Richard's Fourteenth Amendment rights.

Plaintiff contends that Defendants' failure to protect Richard from the attack in the stairwell constituted a violation of his rights under the Fourteenth Amendment. "[T]he general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals."[15] However, Plaintiff argues that Defendants are liable under one of the recognized

---

[11] Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

[12] Marcolongo v. Sch. Dist. of Philadelphia, No. Civ.A.98-5196, 1999 WL 1011899, at *5 (E.D. Pa. Nov. 5, 1999); see also Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997) ("[T]o state a claim, plaintiff must show that defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States.").

[13] Pl.'s Mem. in Opp. at 2.

[14] See Marcolongo, 1999 WL 1011899, at *5 ("It is undisputed that the School District Defendants, as employees of the School District of Philadelphia, qualify as state actors for purposes of section 1983.").

[15] Morse, 132 F.3d at 907; see also Brown v. Commonwealth of Pennsylvania Dept. of Health Emergency Servs. Training Inst., 318 F.3d 473, 477 (3d Cir. 2003) ("The [due process clause of the Fourteenth Amendment] was intended 'to protect the people from the State, not to ensure that the State protected them from each other.' Since the State is not constitutionally required by the Due Process Clause to provide protective services, the Court found that there can be no liability when the State fails to provide such services, even if it would have prevented the

exceptions to this rule called the "state-created danger" theory of liability.[16] To establish liability under this theory, a plaintiff must prove four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.[17]

Upon application of this test to the evidence before the Court, it is clear that Defendants did not violate Richard's constitutional rights under the state-created danger theory. Therefore, Plaintiff's § 1983 claim must be dismissed.

### 1. Foreseeable Harm

This element requires Plaintiff to prove that "the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions."[18] The cases in which the courts have found this element satisfied generally involve situations where a specific harm to a specific person was foreseeable. For example, in Kneipp, the case where the Third Circuit first adopted the state-created danger theory, the police stopped Samantha Kneipp and her husband Joseph as they walked home because they appeared to be inebriated.[19] The officers then granted Joseph permission to go

---

private injury from occurring.") (quoting DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 196-97 (1989)); Dubovsky v. City of Philadelphia, No. Civ.A.04-467, 2005 WL 113016, at *3 (E.D. Pa. Jan. 18, 2005) ("Due process rights, thus, offer protection from the government; they do not generally obligate the government to offer protection from others or oneself.").

[16] This theory is derived from the following language from the Supreme Court in DeShaney: "While the State may have been aware of the dangers that [the plaintiff] faced in the free world, *it played no part in their creation, nor did it do anything to render him any more vulnerable to them.*" 489 U.S. at 201(emphasis added).

[17] Kneipp, 95 F.3d at 1208 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir. 1995)); see also Morse, 132 F.3d at 908.

[18] Morse, 132 F.3d at 908.

[19] Kneipp, 95 F.3d at 1201.

home to relieve their babysitter, leaving Samantha with the officers.[20]  Instead of accompanying Samantha, who was so drunk that she could hardly stand and had even urinated on herself, to her home less than one block away, the police left her to walk home alone.[21]  Tragically, she never made it home and was eventually found unconscious at the bottom of a stairway across the street from her home.[22]  As a result of exposure to the cold, Samantha suffered from hypothermia which caused brain damage.[23]  Based on this evidence, the Court found that:

> A reasonable trier of fact could conclude that in Samantha's state of intoxication, she would be more likely to fall and injure herself if left unescorted than someone who was not inebriated.  Based on the facts and inferences most favorable to the legal guardians, we hold that a reasonable jury could find that the harm likely to befall Samantha if separated from Joseph while in a highly intoxicated state in cold weather was indeed foreseeable.[24]

In this case, Plaintiff argues that it was foreseeable that Richard would be punched while walking in the stairwell because of the pervasive violence at OHS.  In addition, Plaintiff argues that Richard being punched was a direct result of the School District's failure to properly train school police and the lack of surveillance in the stairwell.  This evidence that OHS was a dangerous environment generally is insufficient to establish that it was foreseeable that Richard would be

---

[20] Id. at 1202.

[21] Id. at 1201-02.

[22] Id. at 1203.

[23] Id.

[24] Id. at 1208.  Cf. Mark, 51 F.3d at 1153 ("When the alleged unlawful act is a policy directed at the public at large . . . the rationale behind the rule disappears--there can be no specific knowledge by the defendant of the particular plaintiff's condition, and there is no relationship between the defendant and the plaintiff.")

punched in the stairwell.[25] By Richard's own account, he did not know the student who threw the punch, and moreover, the punch was intended for someone else.[26] Furthermore, the harm to Richard was not the result of a lack of surveillance; rather, it was the result of a misguided punch from another student. No reasonable jury could find that this incident was foreseeable.

## 2. Willful Disregard of Richard's Safety

To meet this standard, Plaintiff must show that Defendants "acted with willful disregard for or deliberate indifference to plaintiff's safety."[27] Although the courts have struggled

---

[25] Plaintiff ignores the uncontradicted evidence that notwithstanding the increase in the number of violent incidents at OHS, very few of these incidents took place in the stairwells. By the Court's count, only eight of the close to 200 incidents reported from September 1999 through February 2003 occurred in a stairwell, and only one occurred in stairwell four. Further, Monastra testified that "[v]ery few incidents actually occur in the stairwells themselves, only because logistically it's more of an issue or a problem for a kid to do something." Monastra Dep. at 19.

[26] See generally Morse, 132 F.3d at 908 (not foreseeable that leaving side door to school unlocked would result in mentally unstable woman entering school and killing teacher); Marcolongo, 1999 WL 1011899, at *7 (finding it significant that no prior problems or incidents involving the plaintiff and the student who allegedly sexually assaulted her had been reported).

[27] Morse, 132 F.3d at 910.

The Third Circuit has recently held that the Supreme Court's decision in County of Sacramento v. Lewis, 523 U.S. 833 (1998) and the Third Circuit's decision in Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1999) modified this prong to require plaintiffs to prove that the defendant's behavior "shocks the conscience." See Schieber v. City of Philadelphia, 320 F.3d 409, 417-20 (3d Cir. 2003) (applying "shock the conscience" standard); see also Crawford v. Beard, No. Civ.A.04-0777, 2005 WL 139082, at *2 (E.D. Pa. Jan. 19, 2005) (adding the "shock the conscience" test as essentially a fifth element to the state-created danger exception); Valentino C. v. Sch. Dist. of Philadelphia, No. Civ.A.01-2097, 2003 WL 177210, at *8 n.4 (E.D. Pa. Jan. 23, 2003) ("This Court agrees that the 'shocks the conscience' standard is the proper standard of fault under a state-created danger theory because it is the proper standard for all substantive due process claims."); Cannon v. City of Philadelphia, 86 F. Supp. 2d 460, 469 (E.D. Pa. 2000) ("[I]n order for the plaintiff to prevail on the second Kneipp prong, a plaintiff must prove that the state actor's behavior shocks the conscience.").

However, other cases have held that the shock the conscience test should only be applied in certain circumstances. See Brown, 318 F.3d at 480 ("We derive from these cases the principle that the 'shocks the conscience' standard should apply in all substantive due process cases *if the state actor had to act with urgency*.")(emphasis added); Estate of Smith v. Marasco, 318 F.3d 497, 508 (3d Cir. 2003) ("We think based on our reading of the precedents in this elusive area of the law that, except in those cases involving either true split-second decisions or, on the other end of the spectrum, those in which officials have the luxury of relaxed deliberation, an official's conduct may create state-created danger liability if it exhibits a level of gross negligence or arbitrariness that shocks the conscience."); Hillard v. Lampeter-Strasburg Sch. Dist., No. Civ.A.03-2198, 2004 WL 1091050, at *4 (E.D. Pa. May 13, 2004) (reviewing relevant precedent and applying deliberate indifference standard because the

to precisely define willful disregard,[28] no reasonable jury could find that Plaintiff's evidence meets this standard. Plaintiff argues that inadequate numbers of school police officers, inadequate training and supervision of those officers, and an insufficient number of surveillance cameras around OHS and in the stairwells demonstrate Defendants' deliberate indifference to Richard's safety. However, "'indefensible passivity,' and 'nonfeasance' do not rise to the level of a constitutional violation."[29] At most, the inadequate security and surveillance[30] at OHS was the result of negligence, and "merely negligent acts cannot support a claim under the state-created danger theory of § 1983."[31] Richard Mohammed was "the tragic victim of random criminal conduct rather than of school officials' deliberate, callous decisions,"[32] and the evidence cited by Plaintiff does not prove otherwise.

### 3. Relationship Between the State and Plaintiff

This element of the state-created danger test requires a plaintiff to prove that there was a relationship between the state and the plaintiff. This element might be more aptly labeled the "foreseeable victim" element as it "contemplates some contact such that the plaintiff was a

---

defendants had the luxury of proceeding in a deliberate fashion). Because Plaintiff's evidence does not even satisfy the more lenient "willful disregard" standard, the Court need not decide which standard applies here.

[28] See Morse, 132 F.3d at 910 n.10, for a detailed account of the uncertain meaning of willful disregard.

[29] Brown, 318 F.3d at 479 (citing D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1376 (3d Cir. 1992)(en banc)).

[30] In Marcolongo, the plaintiff, a student, was allegedly assaulted by another student in a closet at a school. Like Plaintiff here, she cited inadequate security and a lack of surveillance cameras as evidence of the school district's willful disregard of her safety. The Court, however, found that "[t]he employment of security guards as a preventive safety measure is evidence that the School District was not deliberately indifferent to [the plaintiff's] safety." 1999 WL 1011899, at *7.

[31] Morse, 132 F.3d at 911.

[32] Id. at 911-12 (internal quotations omitted).

foreseeable victim of a defendant's acts in a tort sense."[33]  The intent of this element is to "exclude from the reach of the state-created danger theory those instances where the state actor creates only a threat to the general population."[34]  A plaintiff, however, need not show that the defendants knew that a particular individual was in harm's way.[35]  Rather, it is sufficient if the plaintiff is a member of a discrete group of persons who could have been subject to the harm suffered by the plaintiff.[36]

Here, Plaintiff alleges that Richard was a member of a discrete class of persons consisting of the student body at OHS.  Thus, the issue here is whether Richard Mohammed, and all other students present at OHS, "were a sufficiently discrete group of persons who could have been foreseeable victims" of the misguided punch from the unidentified student on the stairwell.[37]  This is a difficult question, but the Court need not decide it here because Plaintiff has failed to satisfy the other three elements of the state-created danger theory.[38]

### 4. Creating the Opportunity for Harm

The final element of the state-created danger test is whether "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur."[39]  "[T]he dispositive factor appears to be whether the state has in some way placed

---

[33] Kneipp, 95 F.3d at 1209 n.22.

[34] Morse, 132 F.3d at 913.

[35] Id. at 914.

[36] Id.

[37] Id.

[38] See id. (declining to decide whether those present in a high school were foreseeable victims of an armed and dangerous intruder); but cf. Marcolongo, 1999 WL 1011899, at *7 (finding this prong not satisfied because individual plaintiff, who was a member of the high school student body, was not a foreseeable victim).

[39] Kneipp, 95 F.3d at 1208.

the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or an omission."[40]

For example, in Kneipp, the police created the opportunity for Samantha Kneipp to suffer the tragic fall by stopping her and Joseph while on their way home and then allowing Joseph to leave without her. Had the police not interfered, a jury could reasonably find that Joseph would have ensured that Samantha made home safely.[41] Instead, the police created the opportunity for Samantha to injure herself by leaving her to walk home alone.

In contrast, it was not the School District's actions or inaction that created an opportunity for the unidentified attacker to throw the punch. Although having surveillance or a police officer in the stairwells may have aided in apprehending the attacker, it would not have prohibited him from throwing the punch. As stated above, Defendants' actions, or lack thereof, did not directly result in Richard becoming the victim of the misguided punch. The evidence cited by Plaintiff cannot prove that Defendants' actions created the foreseeable risk that Richard would suffer the harm he suffered here. Therefore, Plaintiff cannot satisfy this last element of the state-created danger theory.

**B.     Monell**

Plaintiff asserts a claim for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1977), as an alternative theory of liability under § 1983. This attempt is

---

[40] Morse, 132 F.3d at 913.

[41] Kneipp, 95 F.3d at 1209 ("The conduct of the police, in allowing Joseph to go home alone and in detaining Samantha, and then sending her home unescorted in a seriously intoxicated state in cold weather, made Samantha more vulnerable to harm. It is conceivable that, but for the intervention of the police, Joseph would have continued to escort his wife back to their apartment where she would have been safe. A jury could find that Samantha was in a worse position after the police intervened than she would have been if they had not done so. As a result of the affirmative acts of the police officers, the danger or risk of injury to Samantha was greatly increased.")

misguided as <u>Monell</u> is not an alternative theory of municipal liability.[42] The Supreme Court in <u>Monell</u> stated that:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[43]

Thus, <u>Monell</u> does not eliminate the requirement that the state actor must have violated the plaintiff's rights under the Constitution or federal law.[44] Rather, <u>Monell</u> adds an additional hurdle for plaintiffs seeking to sue a local government for injuries inflicted by government employees and agents. Therefore, "[i]t is not enough that [the School District] adopted with deliberate indifference a policy of inadequately training its [school police] officers. There must be a 'direct causal link' between the policy and a constitutional violation."[45]

This is the precise point at which Plaintiff's claim fails. Even drawing, as the Court must, all reasonable inferences in favor of Plaintiff, she has failed to establish that the School District's policies caused Richard *constitutional* harm. Plaintiff cites to evidence showing that the School District enacted inadequate policies regarding training and supervision of its police officers and other inadequate security policies. However, as discussed above, Plaintiff's evidence does not satisfy the elements of the state-created danger exception to the rule that the state has no affirmative

---

[42] <u>M.B. v. City of Philadelphia</u>, No. Civ.A.00-5223, 2003 WL 733879, at *6 (E.D. Pa. Mar. 3, 2003).

[43] 436 U.S. at 690.

[44] <u>Brown</u>, 318 F.3d at 482 ("[F]or there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights.").

[45] <u>Id.</u>

duty to protect citizens from violent acts of private individuals.[46] Because the School District and its employees did not create the danger that resulted in Richard's harm, any failure to protect Richard from the misguided punch was not an infringement on his constitutional rights. Because there has been no constitutional harm, the School District cannot be liable under § 1983.

### C. Willful Misconduct

In this cause of action, Plaintiff argues that the individual defendants "had ample opportunity to consider and review the failings in the school, and their failure to institute policies providing adequate school police on a regular basis demonstrates their willful disregard for the safety of Richard Mohammed."[47] Although the Court is uncertain how this cause of action is separate from Plaintiff's § 1983 claims, it is apparently an attempt by Plaintiff to assert some sort of state law intentional tort liability on the individual defendants. This attempt is futile as the individual defendants are entitled to qualified immunity for their actions here.

"Officials exercising discretionary powers are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[48] This immunity extends to public school officials.[49] Therefore, the threshold question here is: "Taken in the light most favorable to the party

---

[46] See D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1370-73 (3d Cir. 1992), for a detailed discussion of how the relationship between a public school and its students does not create an exception to this rule.

[47] Pl.'s Mem. in Opp. at 14-15.

[48] D.R., 972 F.2d at 136.

[49] Collins v. Chichester Sch. Dist., No. Civ.A.96-6039, 1997 WL 411205, at *3 (E.D. Pa. July 27, 1997) ("Public school officials are entitled to qualified immunity against constitutional claims when their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotations omitted).

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[50]  Since the Court has already determined that the facts here do not show that the individual defendants violated Richard's constitutional rights, the individual defendants are entitled to qualified immunity.[51]  Accordingly, summary judgment is warranted on Plaintiff's willful misconduct cause of action.

       An appropriate order follows.

---

[50] Saucier v. Katz, 533 U.S. 194, 201 (2001).

[51] D.R., 972 F.2d at 1376 ("Since we have concluded that plaintiffs failed to assert a constitutional claim under § 1983, the district court correctly determined that defendants Goode, Peters and Bazzel were entitled to a dismissal based on qualified immunity.")

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHARON MOHAMMED, on behalf of** | : | |
| **RICHARD MOHAMMED, a minor,** | : | |
|     **Plaintiff** | : | **CIVIL ACTION** |
| | : | **No. 03-4766** |
| **v.** | : | |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA et al.,** | : | |
|     **Defendants** | : | |

## ORDER

**AND NOW**, this 4th day of February, 2005, upon consideration Defendants' Motion for Summary Judgment [Doc. #21], Plaintiff's Memorandum of Law in Opposition thereto [Doc. #22], Defendants' Reply [Doc. #29], and Plaintiff's Sur-reply [Doc. #32], and for the reasons set forth in the attached memorandum opinion, it is hereby **ORDERED** as follows:

1. Plaintiff's claims against Defendants Nilva Franco-DeJesus, Joseph Meyer and Frank Roman are voluntarily **DISMISSED** without prejudice.

2. Defendants' Motion for Summary Judgment is **GRANTED** and **JUDGMENT** is entered for Defendants The School District of Philadelphia, Paul Vallas, Edward Monastra and Thomas Smyth, and against Plaintiff. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

3. The Clerk of Court shall mark this case **CLOSED** for statistical purposes.

It is so **ORDERED**.

                                          **BY THE COURT:**

                                          /s/ Cynthia M. Rufe
                                          _____
                                          **CYNTHIA M. RUFE, J.**